# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
7/30/20

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

ACER ASPIRE 6920 LAPTOP MODEL LF1, S/N 81502276523; ASUS LAPTOP MODEL R554L, S/N FBN0WU004046452; AND UNKNOWN BRAND LAPTOP PAINTED SILVER AND BEARING THE INSCRIPTIONS "CAROLYN" AND "1738" CURRENTLY LOCATED AT ATF, 550 MAIN ST., CINCINNATI, OH 45202

Case No. 3:20MJ359

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1) & 924(a)(2) | Felon in possession of a firearm / ammunition |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

KENNETH PITNEY
*Digitally signed by KENNETH PITNEY*
*Date: 2020.07.29 15:29:49 -04'00'*

*Applicant's signature*

SA KENNETH R. PITNEY, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
FaceTime *(specify reliable electronic means)*.

Date: 07/30/2020

City and state: DAYTON, OHIO

SHARON L. OVINGTON U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

The property to be searched is described as follows:

    a.    One (1) Samsung Model SM-N976U cellphone bearing IMEI: 359264100619005
    b.    One (1) LG cellphone bearing IMEI: 358335105437782

(identified as the "**TARGET CELLPHONES**").

    c.    One (1) Swann model DVR8-4580V DVR bearing serial number 119861003190418;
    d.    One (1) SPECO TECHNOLOGIES model D8CS1TB DVR bearing serial number 83282050319;
    e.    One (1) Lorex model LHA2108LC-D DVR bearing serial number DK02181100144;

(identified as the "**TARGET DVRs**").

    f.    One (1) Acer Aspire 6920 laptop model LF1 bearing SNID 81502276523;
    g.    One (1) ASUS laptop model R554L bearing serial number FBN0WU004046452;
    h.    One (1) Unknown brand laptop painted silver and bearing the inscriptions "Carolyn" and "1738"

(identified as the "**TARGET LAPTOPS**)

The TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS are currently maintained in secure law enforcement custody.

This warrant authorizes the forensic examination of the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS for the purpose of identifying the electronically stored information described in Attachment B.

The said LG cellphone bearing IMEI: 58335105437782 is presently stored at the Montgomery County Sheriff's Headquarters evidence locker located at 345 W. Second Street, Dayton, Ohio 45422. The remaining listed electronic devices are currently maintained in law enforcement custody at the ATF evidence locker located at 550 Main Street, Cincinnati, Ohio 45202.

## ATTACHMENT B

1. All records on the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS described in Attachment A that relate to violations of, 18 U.S.C. § 922(g) and 21 U.S.C. § 841(A)(1); including:

   a. Evidence of narcotics trafficking and/or possession;

   b. Evidence of firearms trafficking and/or possession;

   c. Records and information relating to a conspiracy to traffic and/or possess narcotics, including co-conspirator communications;

   d. Records and information relating to a conspiracy to traffic and/or possess firearms, including co-conspirator communications;

   e. Records and information relating to access to communication websites and apps (e.g., SnapChat);

   f. Records and contact information relating to identification of any additional participants in the scheme;

   g. Audio and Video Recordings which may document evidence of firearms trafficking and/or possession

   h. Audio and Video Recordings which may document evidence of narcotics trafficking and/or possession

2. Evidence of user attribution showing who used or owned the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

4. Records of location information, including Global Positioning System ("GPS") data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any video and/or photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE (1) CELLPHONE, THREE (3) DVRS AND THREE (3) LAPTOP COMPUTERS CURRENTLY LOCATED AT ATF, 550 MAIN STREET, CINCINNATI, OHIO 45202; AND ONE (1) CELLPHONE CURRENTLY LOCATED AT MCSO, 345 W. SECOND STREET, DAYTON, OHIO 45422 | Case No. 3:20MJ359 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, KENNETH PITNEY, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—certain, afore listed and described electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since 2013. I am currently assigned to the Cincinnati Group I Field Office in Cincinnati, Ohio. I am a graduate of the ATF Special Agent Basic Training Course. In addition, my trainings include: the Ohio State Highway Patrol Academy and Federal Law Enforcement Training Center Criminal Investigators Training Program among others. I have participated in a variety of criminal investigations, including investigations relating to illegal possession of firearms, illegal purchases of firearms, illegal sales

of firearms, illegal trafficking of firearms, illegal possession of controlled substances and illegal sales of narcotics among others.

3. The information contained in this affidavit is based upon my personal knowledge, as well as other information received from other law enforcement sources. Because this affidavit is made for the limited purpose of establishing probable cause to support the issuance of a search warrant(s) concerning said electronic devices, I have elected to not recite each and every fact known to me as a result of this investigation. As a result of my personal participation in this investigation, conversations with other law enforcement officers, reports and other sources, I am familiar with the various facts and circumstances set forth in this affidavit.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The following property sought to be searched were each taken into custody by the ATF on or about June 10, 2020.

    a. One (1) Samsung Model SM-N976U cellphone bearing IMEI: 359264100619005
    b. One (1) LG cellphone bearing IMEI: 358335105437782

(hereinafter, referred to as the "**TARGET CELLPHONES**").

    c. One (1) Swann model DVR8-4580V DVR bearing serial number 119861003190418;
    d. One (1) SPECO TECHNOLOGIES model D8CS1TB DVR bearing serial number 83282050319;
    e. One (1) Lorex model LHA2108LC-D DVR bearing serial number DK02181100144;

(hereinafter, referred to as the "**TARGET DVRs**").

    f. One (1) Acer Aspire 6920 laptop model LF1 bearing SNID 81502276523;
    g. One (1) ASUS laptop model R554L bearing serial number FBN0WU004046452;
    h. One (1) Unknown brand laptop painted silver and bearing the inscriptions "Carolyn" and "1738"

(hereinafter, referred to as the "**TARGET LAPTOPS**").

5. With the exception of the said LG cellphone bearing IMEI: 58335105437782, each of the said electronic devices are currently maintained in law enforcement custody at the ATF evidence locker located at 550 Main Street, Cincinnati, Ohio 45202. The LG cellphone bearing IMEI: 58335105437782 is presently stored at the Montgomery County Sheriff's Headquarters evidence locker located at 345 W. Second Street, Dayton, Ohio 45422.

6. The applied-for warrant(s) would authorize the forensic examination of the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS for the express purpose of identifying electronically stored data as described in Attachment B.

## PROBABLE CAUSE

7. In addition to my own investigation, I have spoken with members of the Montgomery County Sheriff's Office (MCSO), as well as reviewed their reports of investigation and other documents relevant to the investigation. Based upon my access to all of this information, I have learned, among other things, the following facts:

8. On or about July 11, 2020, Deputies from the MCSO were dispatched to 18 Clover Street, in the City of Dayton in response to a report received from a female who claimed she had been repeatedly sexually assaulted over the prior week at a residence located at 5052 Wagner Ford Road in Harrison Township, Ohio (hereinafter referred to as "the RESIDENCE"). Upon arriving on-scene, a MCSO Deputy interviewed the purported VICTIM who advised that during the period between July 4, 2020 and July 11, 2020, Dustin James VANWEY involuntarily injected her with methamphetamines and proceeded to sexually assault her on numerous occasions despite her protests and saying "no". The VICTIM further advised the on-scene MCSO Deputy that multiple sexual assaults occurred at the 5052 Wagner Ford Road residence. The VICTIM further advised that VANWEY possessed and brandished a small black .380

3

caliber pistol that he used to threaten her during the sexual assaults. The VICTIM further stated that, in addition to said pistol, VANWEY also possessed a camouflaged shotgun in his bedroom located in said RESIDENCE.

9. Upon making initial contact at the RESIDENCE, a Jack Clarence ELSON II exited said residence. ELSON advised that he was the leasee of the premises. ELSON further advised that VANWEY was then located inside the RESIDENCE, and that there were multiple firearms then located in the RESIDENCE. This prompted the calling out of the MCSO SWAT Team. After approximately a 12-hour standoff with the MCSO SWAT, VANWEY exited the RESIDENCE whereby he was immediately apprehended by MCSO Deputies.

10. Subsequent to the termination of July 11, 2020 stand-off, MCSO Deputies executed a state search warrant for the interior of said RESIDENCE. In conjunction with seeking evidence associated with the suspected sexual assaults, Deputies located and seized a Remington .22lr caliber, semi-automatic rifle bearing serial number 2367332 which was found inside a cedar chest located in the bedroom located at the end of the hall on the right. This bedroom was later determined to be occupied by ELSON. Deputies also observed a loaded black pistol magazine in the first bedroom on the left (this was later determined to be routinely occupied by VANWEY). This second firearm was not seized by MCSO Deputies. Deputies also observed a military backpack full of shotgun ammunition, a box for a Smith & Wesson M&P Bodyguard pistol, and other ammunition in the ELSON's bedroom located at the end of the hall on the right.

11. On July 13, 2020, your Affiant responded to the RESIDENCE and spoke with ELSON regarding VANWEY's suspected possession of firearms. ELSON advised that his residence is equipped with multiple motion activated surveillance cameras and multiple DVR

4

systems which provide surveillance coverage both inside and outside the RESIDENCE. ELSON further stated that he believed that the video footage remained stored on the DVR system for period up to several days, possibly for as long as up to one (1) month. ELSON refused to allow your Affiant access to the surveillance systems. ELSON further stated that VANWEY stays in the first bedroom on the left and that he (ELSON) stays in the bedroom at the end of the hall on the right. ELSON further stated that the MCSO SWAT's use of CS gas during the said standoff operation resulted in the inside his house being coated and contaminated with CS gas residue. As such, he was then in the process of attempting to clean up the interior of his premises. ELSON further stated that he had not as of yet been able to work his way throughout the entire house. As such, the house remained a mess. ELSON further stated that VANWEY regularly possessed firearms, and further noted that, prior to said standoff, VANWEY was observed in possession of a camouflaged shotgun. ELSON further stated that he had not located said shotgun, and assumed that the MCSO Deputies probably recovered it during the search of the RESIDENCE. ELSON further indicated that he would contact the MCSO if he found the camouflaged shotgun.

12. On July 13, 2020, your Affiant reviewed the evidence photographs taken during the execution of the MCSO search warrant, together with the "before search" video taken by the MCSO evidence collection team. During the process of reviewing said video, your Affiant observed the loaded pistol magazine on the dresser in the bedroom previously described by ELSON as belonging to VANWEY, together with a military backpack full of shotgun ammunition, in the bedroom identified by ELSON as being his. While reviewing the search warrant photographs, your Affiant also observed the presence of other ammunition in various other rooms throughout the RESIDENCE.

13. On July 13, 2020, MCSO deputies re-interviewed the VICTIM. She stated that she was certain that the pistol VANWEY possessed, carried and brandished was in-fact a .380 caliber because VANWEY had her purchase that caliber of ammunition for the weapon. MCSO Deputies showed the VICTIM a stock photograph of a Smith & Wesson M&P Bodyguard pistol, to which she responded that it looked very much like the same one she observed VANWEY carry. The VICTIM further stated that VANWEY typically kept this firearm wrapped up in a handkerchief with a printed "skull" design.

14. On July 13, 2020, MCSO Deputies executed a state search warrant on VANWEY's cellphone. The search of this cellphone revealed multiple photographs of a camouflaged shotgun. These photographs appear to have been taken on July 4, 2020 while in the RESIDENCE.

15. On July 13, 2020, ATF obtained and executed a Federal Search Warrant for the RESIDENCE. During the execution of this search warrant, investigators located numerous rounds of ammunition throughout the residence, methamphetamine, scales, U.S. currency and a ledger, among other items. In the basement of the residence, investigators located a coffee table which contained the U.S. currency, a scale, methamphetamine, a Samsung Model SM-N976U cellphone bearing IMEI: 359264100619005 and, on a nearby table, an LG cellphone bearing IMEI: 358335105437782 (the "TARGET CELLPHONES"). Investigators observed multiple surveillance cameras installed for use both inside and outside of the RESIDENCE and collected the security system Digital Video Recorders (DVRs). Investigators collected a Swann model DVR8-4580V DVR bearing serial number 119861003190418; a SPECO TECHNOLOGIES model D8CS1TB DVR bearing serial number 83282050319, and a Lorex model LHA2108LC-D DVR bearing serial number DK02181100144 (the "TARGET DVRs"). In ELSON's bedroom,

investigators located an Acer Aspire 6920 laptop model LF1 bearing SNID 81502276523, an ASUS laptop model R554L bearing serial number FBN0WU004046452, and an unknown brand laptop painted silver and bearing the inscriptions "Carolyn" and "1738" (the "TARGET LAPTOPS").

16. Based on the positioning of the said surveillance cameras located throughout the interior and exterior of the RESIDENCE, the TARGET DVRs, if in operational during the relevant time periods of this case, would likely have recorded evidence of illegal narcotics activities and unlawful firearm possession.

17. Based upon your Affiant's prior law enforcement training and experience, I know that the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS have each been stored in a manner such that their contents are, to the maximum extent possible, in the same state as they were when the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS first came into the possession of law enforcement authorities.

18. Based upon my prior law enforcement training and experience, I know that individuals involved in illegal narcotics and firearms possession and trafficking commonly take photographs of the narcotics and firearms they possess and sell. I also know that those engaged in illegal narcotics and firearms possession and trafficking typically use cellphones as a primary means of communication to facilitate and document their illegal activities. I further know that that individuals involved in illegal narcotics and firearms possession and trafficking commonly use various other electronic devices, such as laptop computers, as another means of communication to facilitate and documenting their illegal activities.

19. A check of **ELSON's** criminal history reveals that he has prior convictions that include:

   a. On February 5, 2001 in the Common Pleas Court of Montgomery County, Ohio, **ELSON** plead guilty to charges of Felonious Assault O.R.C. 2903.11(A)(1) F2 and Robbery O.R.C. 2911.02(A)(2) F2;

   b. On June 18, 2007 in the Common Pleas Court of Montgomery County, Ohio, **ELSON** plead guilty to charges of Aggravated Robbery (Serious Physical Harm) O.R.C. 2911.01(A)(3) F1; and

   c. On January 24, 2019 in the Common Pleas Court of Montgomery County, Ohio, **ELSON** plead guilty to charges of Having Weapons While Under Disability (Prior Drug Conviction) O.R.C. 2923.13(A)(3);

20. A check of **VANWEY's** criminal history reveals that he has prior convictions that include:

   a. On December 1, 2015 in the Common Pleas Court of Montgomery County, Ohio, **VANWEY** plead guilty to charges of Robbery (Physical Harm) (6 CTS) O.R.C. 2911.02(A)(2) F2;

   b. On December 1, 2015 in the Common Pleas Court of Montgomery County, Ohio, **VANWEY** plead guilty to charges of Illegal Conveyance of Drugs of Abuse onto the Grounds of a Detention Facility O.R.C. 2921.36(A)(2) F3; and

   c. October 17, 2019 On December 1, 2015 in the Common Pleas Court of Montgomery County, Ohio, **VANWEY** plead guilty to charges of Having Weapons While Under Disability (Prior Offense of Violence) O.R.C. 2923.13(A)(2) F3.

21. Based on my training and experience, I believe that the aforementioned facts establish probable cause to believe that the TARGET CELLPHONES, TARGET DVRs and TARGET LAPTOPS may contain relevant evidence of violations of Federal law to wit: 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(A)(1).

22. Based on my training and experience, I believe that the aforementioned facts establish probable cause to believe that the TARGET CELLPHONES, TARGET DVRs, and

8

TARGET LAPTOPS contain relevant evidence of violations of Federal law to wit: 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(A)(1).

## TECHNICAL TERMS

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.    Based on my training, experience, and research, I know that the TARGET CELLPHONES have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

   f. I know that when an individual uses an electronic device to facilitate the trafficking of narcotics or firearms, the individual's electronic device will

11

        generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

    27.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the said electronic devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

    28.    *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

//

//

//

//

//

## **CONCLUSION**

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the TARGET CELLPHONES, TARGET DVRs, and TARGET LAPTOPS described in Attachment A, in order to seek the items described in Attachment B.

Respectfully submitted,

KENNETH PITNEY
Digitally signed by KENNETH PITNEY
Date: 2020.07.29 15:30:27 -04'00'

Kenneth Pitney
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me on July 30, 2020.

Sharon L. Ovington
United States Magistrate Judge

13